# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| LESTER I. SPIELMAN,<br><br>  Plaintiff,<br><br>  v.<br><br>UNITED SERVICES AUTOMOBILE ASSOCIATION, *et al.*,<br><br>  Defendants. | CV 19-01359 TJH (MAAx)<br><br><br>Order<br><br>[140][142] |

    The Court has considered Plaintiff Lester I. Spielman's motion for attorneys' fees and costs, together with the moving and opposing papers.

    On February 22, 2019, Spielman filed this class action against Defendants United Services Automobile Association and USAA Casualty Insurance Company [collectively, "USAA"] for breach of contract and declaratory relief. The claims were based on USAA's failure to pay sales tax and registration fees to its insureds when their leased vehicles were deemed to be a total loss.

    On December 9, 2021, the Court granted Spielman's motion for class certification. On February 25, 2022, the Ninth Circuit denied USAA's interlocutory appeal of the order granting certification.

Thereafter, the parties reached a tentative settlement. On September 27, 2022, Spielman filed a Second Amended Complaint ["SAC"] that, *inter alia*, added new defendants to ensure the settlement's comprehensiveness.

On September 28, 2022, the Court granted Spielman's unopposed motion to conditionally certify a proposed class, pursuant to the SAC, and to preliminarily approve a class settlement ["the Preliminary Order"]. The preliminarily-approved settlement calls for a gross settlement fund of $3,050,000.00, which is approximately 31% of the potential total damages. The gross settlement fund is to be reduced by $5,000.00, as an incentive payment to Spielman, and up to $80,000.00, for settlement administration costs. Spielman estimated that there were 3,710 members of the proposed class.

As part of the settlement, USAA agreed to change its practices by including sales tax and vehicle title and registration fees in payments to insureds for leased vehicles that are deemed to be a total loss. Class counsel estimated that the change in practices will result in an annual benefit of $1,174,530.00 to USAA's insureds.

In the Preliminary Order, the Court stated that class counsel's fees would be limited to no more than 25% of the gross settlement fund, and that class counsel's costs would be approved upon submission of a detailed breakdown demonstrating the reasonableness of those costs.

Spielman, now, moves for an award of attorneys' fees equaling 33.3% of the gross settlement fund, or $762,500.00, and costs of $26,223.17.

**ATTORNEYS' FEES**

The settlement agreement, here, provides that the Court will determine the amount of attorneys' fees for class counsel. In setting the attorneys' fee award, the Court must ensure that the fees are reasonable. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). In the Ninth Circuit, the benchmark for a reasonable class action contingency award is 25% of the gross settlement fund. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 273 (9th Cir. 1989). The Court may award more than 25% if there are exceptional circumstances. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

1048 (9th Cir. 2002). The Court typically assesses several, non-exclusive factors to determine whether a higher percentage fee award is warranted: (1) Whether class counsel achieved exceptional results; (2) The risk class counsel incurred in taking the case; (3) Whether class counsel generated benefits beyond the settlement fund; (4) The fees that have been awarded in similar cases; (5) The money, time, and effort class counsel expended during litigation; (6) Whether class counsel took the case on a contingency basis; and (7) How the requested percentage compares to a lodestar calculation. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015); *see also Vizcaino*, 290 F.3d at 1049.

### Results Achieved and Risk Incurred by Class Counsel

With regard to the first two factors, the results achieved and the risk incurred by class counsel, Spielman argued that the 31% recovery through the proposed settlement is exceptional in light of the risks that class counsel faced by taking on this case. As pointed out by Spielman, there is no precedent supporting his position that he was entitled to recover sales tax and registration fees on his leased vehicle that was totaled. Indeed, the Northern District of California dismissed a similar case for failure to state a claim. *Mulkey v. CSAA Ins. Exch.*, No. CV 20-08120 RS (N.D. Cal. Mar. 10, 2021).

However, the Court is not convinced that the risk class counsel took on by bringing this case, or the outcome achieved, here, rises to the level of exceptional. *See Vizcaino*, 290 F.3d at 1049. Indeed, the 31% recovery appears to be appropriate – not exceptional – given Spielman's uncertain claims.

### Benefits Achieved Beyond the Settlement Amount

With regard to the third factor, benefits achieved beyond the settlement amount, Spielman argued that USAA's change in its practices is an added benefit of the settlement and supports an upward departure from the 25% benchmark. The Ninth Circuit has held that District Courts have the discretion to set fees above the 25% benchmark based on a "settlement [that] contains significant benefits *for Plaintiffs* beyond the cash recovery." *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 923 (9th Cir.), vacated on other grounds,

772 F.3d 608 (9th Cir. 2014) (emphasis added).

While it is clear that the change in practices will, generally, provide a benefit to all of USAA's insureds going forward, the benefit to *class members* is speculative because it benefits only those insureds whose vehicles are deemed a total loss *after* the settlement is finally approved. Thus, the change in practices provides only mild support for an upward departure from the benchmark.

**Fees Awarded in Similar Cases**

With regard to the fourth factor, fees awarded in similar cases, Spielman pointed to several other cases within the Ninth Circuit where District Courts awarded similar attorneys' fees, as a percentage of the gross settlement fund, to his requested 33.3%. Spielman argued that those cases are similar because counsel in those cases obtained settlements that were similar, as a percentage of potential damages, to the 31% recovery of the potential damages, here.

Those cases, however, are distinguishable. Significantly, those cases involved areas of law that are drastically different – both legally and factually – from the instant insurance dispute. Further, the courts in those cases based their fee determinations largely on considerations other than the percentage of maximum recovery. In fact, two of the District Courts that decided those cases stated explicitly that their fee awards were *not* based on the percentage of recovery. In *Boyd*, Judge Carter explained that a recovery of 36% of maximum potential damages, "although impressive … does not justify a departure from the benchmark [to 33%]." *Boyd v. Bank of Am. Corp.*, No. CV 13-0561 DOC, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014). Similarly, in *Moreyra v. Fresenius Medical Care Holdings, Inc.*, Judge Selna explained that a recovery of 32% of maximum potential damages was "adequate … [but] not necessarily so 'exceptional' such that this factor weighs heavily in favor of a higher percentage award." *Moreyra v. Fresenius Med. Care Holdings, Inc.*, No. CV 10-517 JVS (RZx), 2013 WL 12248139, at *3 (C.D. Cal. Aug. 7, 2013) (quoting *Vizcaino*, 290 F.3d at 1048).

Accordingly, the cases cited by Spielman do not provide significant support for an

upward departure from the benchmark.

### Money, Time, and Effort on a Contingency Basis

With regard to the fifth and sixth factors – money, time, and effort expended by counsel and counsel's agreement to take the case on a contingency basis – class counsel litigated this case for three years without certainty of payment. In that time, counsel, *inter alia,* deposed two witnesses; defended USAA's deposition of Spielman; retained an expert; reviewed over 40,000 total loss claims; and participated in mediation. A review of the case file shows that there was minimal motion practice. Class counsel successfully moved for class certification and for preliminary approval of the settlement. Class counsel, also, defended USAA's petition for an interlocutory appeal before the Ninth Circuit. In sum, the work performed by class counsel indicates that they adequately, or even more than adequately, prosecuted this case on a contingency basis. However, class counsel's work, here, did not rise to the level of exceptional, *see Vizcaino*, 290 F.3d at 1048, and, therefore, provides only mild support for an upward departure from the benchmark.

### Comparison of the Requested Fee to the Lodestar

With regard to the seventh factor, comparison of the requested fee to the lodestar, courts, generally, may award attorneys' fees based either on a percentage of the gross settlement fund – the method that class counsel requested, here – or, alternatively, based on a lodestar calculation. *Vizcaino*, 290 F.3d at 1050. The lodestar is the reasonable amount of time spent by counsel multiplied by counsel's reasonable hourly rate. *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999). The Court can, also, use the lodestar as a comparator to determine whether the percentage requested by class counsel is reasonable. *Vizcaino*, 290 F.3d at 1050. Spielman argued that his lodestar calculation of $1,047,169.70 demonstrates that the requested 33.3% contingency – amounting to $1,016,565.00 – is reasonable.

Spielman bears the burden to demonstrate, through documentation, that his lodestar calculation is reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

However, Spielman did not provide the Court with sufficient information or evidence to make that determination.

Only three of the four law firms representing the class submitted a declaration regarding their lodestar calculations. The declaration from the fourth firm, Kopelowitz Ostrow Ferguson Weiselberg Gilbert, was, apparently, omitted by accident. Attached to the three declarations were summary tables showing the hours spent by various billers for general tasks, such as "Discovery and Experts" and "Case Origination and the Original Complaint," along with each biller's hourly rate. Spielman failed to provide detailed contemporaneous time records for each biller. The billing summaries, alone, are insufficient for the Court to determine the reasonableness of the hours spent. *See Hensley*, 461 U.S. at 437. If Spielman had requested the lodestar, the Court would require class counsel to submit billing records. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000).

Spielman seeks rates ranging from $208.00 to $997.00. "A reasonable hourly rate is ordinarily the 'prevailing market rate in the relevant community'" – here, the Central District of California. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)). However, Spielman cited only to cases that were litigated in the Northern District of California to show the reasonableness of his requested rates. Moreover, Spielman went on to confusingly explain that class counsel's hourly rates were not calculated based on rates in the Northern District, but, rather, on the Adjusted Laffey Matrix, which calculates market rates for attorneys in the Washington, D.C. area. Spielman cited several cases where, he said, courts approved rates that were based on the Adjusted Laffey Matrix. But, only three of those cases even mentioned the Laffey Matrix, and those cases – *Beck v. Test Masters Educ. Servs., Inc.*, 73 F. Supp. 3d 12 (D.D.C. 2014); *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 565 (E.D. Va. 2016); and *Mancini v. Dan P. Plute, Inc.*, 358 F. App'x 886, 888-89 (9th Cir. 2009) – pertained to litigation in the Washington, D.C. area. Additionally, Spielman noted that the Northern District, previously, approved rates of up

to $826.00 for one of the class counsel firms, Tycko & Zavareei LLP. *See Kumar v. Salov N. Am. Corp.*, No. CV 14-2411 YGR, 2017 WL 2902898, at *1 (N.D. Cal. July 7, 2017). However, *Kumar* was litigated in a different legal market and involved very different claims – namely, deceptive marketing practices – than those litigated, here.

Consequently, it would not be reasonable for the Court to use class counsel's lodestar calculation as a reasonable comparator, here, for a 33.3% attorneys' fee award.

### Balance of Factors

In sum, the balance of the factors does not weigh in favor of finding an exceptional circumstance that would warrant an upward departure from the 25% benchmark. *See Vizcaino*, 290 F.3d at 1048. The proposed settlement is satisfactory, but not exceptional. Accordingly, class counsel's reasonable fee award will be 25% of the gross settlement fund, or $762,500.00, if the Court grants final approval of the proposed settlement.

## LITIGATION COSTS

Class counsel may recover from the settlement fund their reasonable costs that they would have normally charged to their clients. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). In the Preliminary Order, the Court instructed class counsel to submit a detailed breakdown of their costs so that the Court could evaluate the reasonableness of the costs.

Again, only three of the four firms representing the class provided declarations setting forth their costs. Again, no declaration was provided by Kopelowitz Ostrow Ferguson Weiselberg Gilbert. Regardless, none of the declarations provided the detailed breakdown of costs that the Court ordered. Rather, each declaration set forth merely the total amount of costs incurred by each respective firm, explaining that the actual costs were recorded in computerized records in each firm's custody. It is not clear why class counsel did not submit cost records, or even a detailed summary by category of costs. Therefore, the Court cannot determine whether the requested costs requested are reasonable, or are of the type that would have normally been charged to a client. *See Harris*, 24 F.3d at 19.

Consequently, the motion for costs must be denied. The Court will permit Spielman

one more opportunity to seek approval of the litigation costs.

**INCENTIVE AWARD**

Finally, Spielman, again, requested a $5,000.00 incentive award. The Court preliminarily approved the $5,000.00 incentive award in the Preliminary Order, subject to any objections from class members. Therefore, the incentive award is a matter for the final approval order.

Accordingly,

It is Ordered that the motion for attorneys' fees be, and hereby is, Granted in the amount of 25% of the gross settlement fund, subject to final approval of the proposed settlement.

It is further Ordered that the motion for costs be, and hereby is, Denied with leave to renew one last time.

It is further Ordered that the renewed motion for costs shall be filed by March 20, 2023.

It is further Ordered that the motion for final approval of the proposed class action settlement will be heard at 10:00 a.m. on April 17, 2023.

Date: March 7, 2023

Terry J. Hatter, Jr.
Senior United States District Judge