1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11    LESTER I SPIELMAN, individually
12    and on behalf of all others similarly
      situated,

13                                  Plaintiff,

14          v.

15    UNITED SERVICES AUTOMOBILE
      ASSOCIATION, USAA CASUALTY
16    INSURANCE COMPANY, USAA
      GENERAL INDEMNITY COMPANY,
17    and GARRISON PROPERTY AND
      CASUALTY INSURANCE
18    COMPANY,

19                                  Defendants.

20

Case No. 2:19-cv-01359-TJH-MAAx

**FINAL ORDER AND JUDGMENT
APPROVING CLASS ACTION
SETTLEMENT    [JS-6]**

21
22
23
24
25
26
27
28

This matter is before the Court on the Motion for Final Order and Judgment Approving Class Action Settlement. The matter came before the Court on April 17, 2023, for a hearing pursuant to Federal Rule of Civil Procedure 23(e) (the "Final Approval Hearing") as to the fairness, reasonableness, and adequacy of the Parties' proposed Settlement of this Action preliminarily approved by the Court on September 28, 2022. All interested Persons were provided with notice and the opportunity to be heard regarding the proposed Settlement.

The Court has again reviewed the Settlement Agreement (including Exhibits) (the "Settlement Agreement") and all papers submitted in connection with the proposed Settlement, and has considered all arguments of counsel. The Court finds that the Parties have demonstrated full compliance with the Preliminary Approval Order, and that there are substantial and sufficient grounds for entering this Final Order and Judgment Approving Class Action Settlement ("Order" or "Final Order and Judgment"). The Court therefore directs the Parties and their counsel to implement and consummate the Settlement Agreement and directs the administration of the Settlement in accordance with the terms and provisions of the Settlement.[1]

**BACKGROUND**

1. On June 30, 2022, Plaintiff moved for preliminary approval of the proposed Settlement. (Dkt. 128-1.) On September 28, 2022, this Court entered the Preliminary Approval Order. (Dkt. 134.) This Final Order and Judgment incorporates the provisions, findings, and conclusions in the Preliminary Approval Order unless specifically stated otherwise in this Order.

2. After entry of the Preliminary Approval Order, the Parties proceeded to implement the terms of the Preliminary Approval Order and the Settlement. On

---

[1] The Settlement Agreement is hereby incorporated by reference in this Order, and all terms and phrases used in this Order shall have the same meaning as in the Settlement Agreement.

1

February 3, 2023, the Settlement Administrator, Epiq Class Action & Claim Solutions, Inc. ("Epiq"), submitted the Declaration of Jeanne M. Chernila Regarding Implementation of Notice and Class Settlement Administration (the "Original Declaration"), and on February 17, 2023 submitted the Supplemental Declaration of Jeanne M. Chernila Regarding Implementation of Notice and Settlement Administration and Update on Address Verification Form Submission (the "Supplemental Declaration"), which updated the Original Declaration.   These Declarations provide detailed information regarding the course and scope of post-preliminary approval notice and settlement administration activities.

3.    On November 28, 2022, Epiq mailed the Mailed Notice to all Settlement Class Members after updating the mailing addresses provided by the USAA Entities, in accordance with the Preliminary Approval Order and Settlement Agreement.  In the initial mailing, Epiq mailed 3,860 Mailed Notices, including Address Verification Forms to Former Policyholders.  With respect to those Mailed Notices returned with a forwarding addresses, Epiq remailed such Mailed Notices to those forwarding addresses; with respect to returned Mailed Notices without a forwarding address, Epiq attempted to obtain a current mailing address using the methods specified in the Settlement Agreement.  In all, 3,849 of the 3,860 Mailed Notices were mailed and not returned as undeliverable, and therefore are presumed delivered, representing a more than 99.7% "reach rate."

4.    In addition, Epiq established a Settlement Website, also in accordance with the Settlement Agreement and Preliminary Approval Order.   The Website provided pertinent information on the Settlement, including Important Dates, Frequently Asked Questions, and relevant documents, as well as an online option for Former Policyholders to submit their Address Verification Forms.

5.    Epiq also set up a 24-hour IVR/VRU telephone system, which provided answers to frequently asked questions.  The IVR/VRU also permitted callers to "punch through" to a live Call Center during regular business hours.

6.     The Website, IVR/VRU, and Call Center went "live" on the Mailed Notice Date.

7.     Settlement Class Members were given until January 27, 2023, or 60 days after the Mailed Notice Date, in which to exclude themselves or object to the Settlement.  Former Policyholders were also given until January 27, 2023 in which to submit an Address Verification Form (either by mail or online on the Website).

8.     On December 12, 2022, Class Counsel filed their petition for an Attorneys' Fees and Expenses Award (up to a maximum of $1,042,788.17) and for a Service Award to the Named Plaintiff, up to a maximum of $5,000.

9.     The Settlement Administrator's Original Declaration included for the Court's consideration the Opt-Out List, which is the list of all Settlement Class Members who timely excluded themselves from the Settlement.  The Supplemental Declaration noted that there was no update to that Opt-Out List.

10.     One Settlement Class Member filed a timely exclusion request, and is on the Opt-Out List.  No Settlement Class Members filed untimely exclusion requests.

11.     All Former Policyholders who submitted a timely Address Verification Form are entitled to their share of the Net Settlement Fund.   All other Former Policyholders are not eligible for a Settlement Claims Payment, but are bound by the terms of the Settlement and this Final Order and Judgment, including the Release.

12.     No Class Member objected to the Settlement.  Furthermore, as set forth in the Settlement Administrator's Original Declaration, on July 8, 2022, notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA Notice"), was sent to the U.S. Attorney General and the departments of insurance of each of the 50 states and the District of Columbia.  No state or federal official has objected to the proposed Settlement.   As noted below, the Court finds that the CAFA Notices sent by the Settlement Administrator are in compliance with 28 U.S.C. § 1715.

**FINDINGS AND CONCLUSIONS**

13.     This Court rules that it has personal jurisdiction over all Settlement Class

3

Members, and subject matter jurisdiction over this Action and to approve the Settlement Agreement.  There is CAFA diversity (the Named Plaintiff is a citizen of California, and the USAA Entities are all citizens of Texas); there are more than 100 class members; and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d).

14.     The Court approves the Settlement Agreement and finds that the proposed Settlement, including but not limited to the Settlement Fund and Net Settlement Fund, the calculation of Settlement Claim Payments, the distribution of payments to Qualifying Settlement Class Members, the Mailed Notice, the Address Verification Form for Former Policyholders, the Settlement Website, the requirements for exclusions and objections, the Release, the Attorneys' Fees and Expenses Award, and the Service Award, is sufficiently fair, reasonable, and adequate to warrant entry of this Final Order and Judgment.  The Court gives final approval to the Settlement and finds that the Settlement is fair, reasonable, and adequate as to each of the Parties and the Settlement Class Members, and consistent and in compliance with all requirements of Federal Rule of Civil Procedure 23, due process, and all other applicable laws as to, and in the best interests of, the Settlement Class Members.  The Settlement was the product of nearly three years of litigation.  Furthermore, Class Counsel believe, based on their familiarity with the extensive production of documents and data spreadsheets relevant to this Action, the significant fact and expert discovery, and their institutional knowledge and experience related to automotive total loss class action claims and the strengths and weaknesses thereof, that the settlement is fair, reasonable, and adequate. The Court further finds that the Settlement is the result of good-faith, non-collusive, and arm's-length negotiations by the Parties.  The Court directs the Parties and their counsel to implement and consummate the Settlement Agreement in accordance with its terms and provisions.

15.     The Court previously certified the Litigation Class.  The Court rules that, for settlement purposes only, all requirements of Federal Rule of Civil Procedure 23(a)

and (b)(3) have been satisfied with respect to the Settlement Class:  (a) Members of the Settlement Class are so numerous as to make joinder of all Settlement Class Members impracticable; (b) there are questions of law or fact common to Members of the Settlement Class; (c) the claims of the Named Plaintiff are typical of the claims of the Settlement Class Members; (d) the Named Plaintiff and Class Counsel will fairly and adequately protect the interests of the Settlement Class Members, and their interests are not in conflict with those of the Settlement Class Members; (e) questions of law or fact common to the Settlement Class Members predominate over questions affecting only individual Settlement Class Members; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

16.    Rule 23(e)(2) sets out the criteria for final approval of a class action settlement:

> (2) Approval of the Proposal. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

17.    This Settlement satisfies all these requirements.

18.    The Court finds that Class Counsel and the Named Plaintiff have adequately represented the Settlement Class.  Under Rule 23, "class counsel . . . must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court has considered consider Class Counsel's (1) work in identifying or investigating potential claims; (2) experience in handling class

1   actions or other complex litigation, and the types of claims asserted in the case; (3)

2   knowledge of the applicable law; and (4) resources committed to representing the class.

3   *See* Fed. R. Civ. P. 23(g)(1)(A(i-iv).

4        19.    The Court finds that Class Counsel have diligently investigated the claims

5   of the Settlement Class and through the vigorous prosecution of this Action obtained

6   class certification. Class Counsel also have demonstrated an in-depth knowledge of the

7   law, having been appointed class counsel in numerous analogous consumer class

8   actions, including many other automotive total loss cases.

9        20.    The Court finds that Mr. Spielman has satisfied the adequacy requirement

10   of Rule 23(a).  Mr. Spielman does not have a conflict of interest with the Settlement

11   Class, and he has vigorously prosecuted this Action on behalf of the class.  The Court

12   finds that Plaintiff's request for a Service Award of $5,000.00 is fair and justified,

13   given Mr. Spielman's work on the case from its inception.  The Named Plaintiff shall

14   also be entitled to receive a Settlement Claim Payment on the same terms as any other

15   Qualified Settlement Class Member.

16        21.    The Court also finds that the Settlement does not grant preferential

17   treatment to Mr. Spielman, and that the Settlement treats Settlement Class Members

18   equally. The Settlement Claim Payments will be calculated based on the value of the

19   Settlement Class Members' vehicles, which is reasonably related to the amounts

20   alleged to be owed for taxes and fees.  The only difference in treatment among

21   Settlement Class Members is that Former Policyholders must submit a simple Address

22   Verification Form to help ensure that Settlement Claim Payments reach their current

23   addresses.  The Address Verification Form could be submitted by mail (a copy was

24   sent with the Mailed Notice to all Former Policyholders, and was also available online)

25   or online on the Settlement Website, and Former Policyholders had 60 days in which

26   to do so.  The Court finds that the Address Verification Form imposed no appreciable

27   burden on Former Policyholders, and its use was justified to attempt to ensure that

28   Settlement Claim Payments will be mailed to Former Policyholders' current addresses

1  so that they will receive them.

2       22.    The Court further finds that the Settlement was negotiated at arm's length

3  and was not collusive.

4       23.    The Court finds that the relief provided to the Settlement Class is more

5  than fair, reasonable, and adequate, taking into account the costs, risks, and delays of

6  trial and appeal; the effectiveness of the proposed relief and the manner of distributing

7  the relief to the Settlement Class, including the method for allocating the Net

8  Settlement Fund among Qualifying Settlement Class Members; and the timing and

9  payment of the Attorneys' Fees and Expenses Award and the Service Award.

10       24.    The Settlement is not a claims-made settlement; nor is there any reversion

11  to the USAA Entities.  All of the $3,050,000 Settlement Fund will go to the payment

12  of Settlement Claim Payments to Qualifying Settlement Class Members, after

13  deduction for the reasonable fees and expenses of Class Counsel, the Named Plaintiff,

14  and the Settlement Administrator.  There is also no *cy pres* award, except for the

15  amount of uncashed checks after a 180-day Stale Date, as noted below.

16       25.    In addition, as part of the Settlement, the USAA Entities have agreed to

17  pay applicable Sales Tax and Title and Registration Fees on total loss vehicles in

18  California without regard to whether the vehicle is leased or owned. The USAA

19  Entities reserve the right to change their practices in the event of a change in California

20  law, a change in the State of California's taxes or fees charged incidental to the transfer

21  of ownership of motor vehicles titled and/or registered in California, or other changes

22  in taxes and fees, or appropriate changes in the terms of the applicable insurance

23  policies.

24       26.    The Court also has considered the Settlement Class Members' expected

25  recovery balanced against the value of the Settlement.  The Court agrees with Class

26  Counsel's analysis that the Settlement provides significant relief to Settlement Class

27  Members for claims that have uncertain prospects of success, particularly given the

28  fact that no California state or federal court has held that insureds who lease a vehicle

are entitled, upon an insurer's total loss determination, to full payment of sales tax notwithstanding that the sales tax necessary to lease a vehicle is different—and less—than sales tax necessary to purchase a vehicle.

27.     On March 7, 2023, this Court entered an Order regarding Class Counsel's request for attorneys' fees.  (Dkt. 148.) The Court granted Class Counsel attorneys' fees in the amount of 25% of the gross settlement fund, or $762,500.00, subject to the Court's determination on final approval.  (Dkt. 148 at 8.) The Court now grants final approval to the Settlement, and awards Class Counsel $762,500.00 in attorneys' fees. In the March 7, 2023 Order, the Court also denied Class Counsel's motion for costs with leave to renew that motion to seek approval of payment of litigation costs.  (Dkt. 148 at 8.)  On March 20, 2023, Class Counsel filed a Renewed Motion for Costs with additional supporting information, seeking $21,447.20 in costs. (Dkt. 149.)  The Court finds that Class Counsel have sufficiently demonstrated the amounts of the costs incurred, and that the requested costs are fair and reasonable.  Accordingly, the Court awards Class Counsel $21,447.20 in costs.  With the attorneys' fees awarded, the total Attorneys' Fees and Expenses Award is $783,947.20.

28.     The Court finds that the costs of notice and settlement administration to be awarded to Epiq (up to a maximum of $80,000.00 incurred as of the date the Settlement Claim Payments are mailed) are fair and reasonable given the work the Settlement Administrator has performed.  The Court finds that Epiq has performed all its duties under the Settlement.

29.     The Court also finds that the notice to the Settlement Class complied with all requirements of Rule 23 and due process.  The Mailed Notice was consistent with the form and content of the Federal Judicial Center's models and clearly and accurately conveyed to Settlement Class Members all material terms of the Settlement. Furthermore, the individual Mailed Notice reached 99.7% of the Settlement Class Members, which is more than sufficient to meet all legal requirements.

30.     The Settlement Website, IVR/VRU telephone system, and the Call Center

also supplemented the Mailed Notice provided to Settlement Class Members.  The Website relevant materials and information (including a mechanism for online submission of Address Verification Forms). The IVR/VRU telephone system contained recorded answers to frequently asked questions, along with an option permitting Settlement Class Members to speak to live operators during regular business hours or leave messages in a voicemail box. In short, the notice provided to Settlement Class Members in this matter was robust, accurate, readily understandable, and comprehensive.

31.    Accordingly, the Court finds that the Parties have implemented and complied with the notice plan as provided in the Preliminary Approval Order.  The Court finds that the Mailed Notice, Website notice, and the notice methodology implemented pursuant to the Settlement Agreement (i) constituted the best practicable notice; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, and their right to exclude themselves from or object to the proposed Settlement and to appear at the Final Approval Hearing; (iii) were reasonable and constituted due, adequate, and sufficient notice to all Persons entitled to receive notice; and (iv) met all applicable requirements of Federal Rule of Civil Procedure 23, due process, and any other applicable rules or law.

32.    The Settlement also provided ample opportunity for Settlement Class Members to exclude themselves from or object to any element of the Settlement.

33.    Furthermore, the Release is narrowly tailored to the Settlement Class Members' claims.

34.    The Court also finds that the CAFA Notice provided by the Settlement Administrator on behalf of the USAA Entities complied with 28 U.S.C. § 1715.

**IT IS HEREBY ORDERED:**

35.    The Motion for Final Order and Judgment Approving Class Action Settlement is granted.  The Court grants final approval to the Parties' Settlement, as set

forth in the Settlement Agreement.

36. The Court gives final approval to the Settlement and finds that the Settlement is fair, reasonable, and adequate as to each of the Parties and the Settlement Class Members, and consistent and in compliance with all requirements of due process, federal law, and any other applicable law, as to, and in the best interests of, the Settlement Class Members. The Court further finds that the Settlement is the result of good-faith, non-collusive, and arm's-length negotiations by the Parties, including a mediation session before the Honorable Irma Gonzalez (ret.). The Court directs the Parties and their counsel to implement and consummate the Settlement Agreement in accordance with its terms and provisions.

37. The Court grants final approval of the certification of the following Settlement Class, for settlement purposes only:

> All individuals and entities insured by the USAA Entities under a California automobile policy whose insurance covered or covers a leased vehicle under private-passenger physical damage coverage, including collision and physical damage other than collision coverage, and who made a first-party claim from February 22, 2015 through September 28, 2022, whose leased vehicle was determined by the USAA Entities to be a Total Loss, and who received a Total Loss Claim Payment from the USAA Entities for the value of the totaled vehicle that did not include the full amount of the Sales Tax and/or Vehicle Regulatory Fees.

> Excluded from the Settlement Class are: (1) all officers, employees, and agents of the USAA Entities, Class Counsel, and their immediate family members, and (2) any members of the judiciary assigned to the Action and their immediate families.

38. The USAA Entities and the Released Persons shall retain all rights to assert that the Action could not be certified as a class action except for settlement purposes.

39. No liability with respect to the Settlement shall attain in favor of the Named Plaintiff, the Settlement Class, or Class Counsel as against any officer, director, member, agent, or employee of the USAA Entities, but rather, the Named Plaintiff, the Settlement Class, and Class Counsel shall look solely to the assets of the USAA Entities for satisfaction of the Settlement.

40. The Court finds that Epiq has complied with its duties under the

Preliminary Approval Order and the Settlement Agreement. The Court approves the payment of up to $80,000.00 to Epiq from the Settlement Fund as the reasonable costs of notice and settlement administration.

41.   The Court dismisses the Action on the merits as to the USAA Entities with prejudice and without fees or costs except as provided in this Final Order and Judgment.

42.   The Court approves the Opt-Out List submitted by the Settlement Administrator (Exhibit 1 hereto) (the "Court-Approved Opt-Out List") and determines that the Court-Approved Opt-Out List is the complete list of all Settlement Class Members who have timely requested exclusion from the Settlement Class and, accordingly, shall neither share in nor be bound by the Final Order and Judgment. All other Settlement Class Members shall be bound by the terms of the Settlement.

43.   The Court approves the distribution plan set forth in Paragraphs 22-24 of the Settlement Agreement. The following amounts shall be paid from the $3,050,000 Settlement to yield the Net Settlement Fund, from which the Settlement Claim Payments shall be calculated and processed:

| | |
|---|---|
| Attorneys Fees' and Expenses Award: | $783,947.20 |
| Service Award: | $5,000.00 |
| Payment to Epiq: | (up to) $80,000.00 |

44.   Epiq and Class Counsel shall use their best efforts to mail Settlement Claim Payment checks to Qualifying Settlement Class Members within thirty (30) days after the Effective Date.

45.   Without affecting the finality of the Final Order and Judgment for purposes of appeal, the Court reserves jurisdiction over the USAA Entities, the Named Plaintiff, and the Settlement Class as to all matters relating to the administration, consummation, enforcement, and interpretation of the terms of the Settlement and the Final Order and Judgment, and for any other necessary purposes.

46.   The Court finds and adjudges that, as of the Effective Date, the Named

11

Plaintiff, all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Court-Approved Opt-Out List, and their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, successors, employees, employers, companies, partnerships, corporations, professional services corporations, limited liability companies, members, owners, officers, directors, partners, joint venturers, managing agents, affiliates, subsidiaries, predecessors, successors, and/ or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether they have received actual notice of the proposed Settlement and regardless of whether they previously initiated or subsequently initiate individual litigation or other proceedings encompassed by the Released Claims, have conclusively compromised, settled, discharged, and released all Released Claims against the USAA Entities and the Released Persons, and are bound by the provisions of the Settlement Agreement, as further provided in Paragraphs 43-47 of the Settlement Agreement.[2]

---

[2] The Release is defined in the Settlement Agreement as follows:

43.   Plaintiff, and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Court-Approved Opt-out List, shall be bound by this Agreement, and all of their claims, as provided under this Agreement, shall be dismissed with prejudice and released, even if they never received actual notice of the Action or the Settlement.

44.   Upon the Effective Date, Plaintiff, all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Court-Approved Opt-Out List, and their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, successors, employees, employers, companies, partnerships, corporations, professional services corporations, limited liability companies, members, owners, officers, directors, partners, joint venturers, managing agents, affiliates, subsidiaries, predecessors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether they received actual notice of the proposed Settlement and regardless of whether they previously initiated or subsequently initiate individual litigation or other proceedings encompassed by the Released Claims (the "Releasing Persons"), will be bound by the Final Order and Judgment and shall be conclusively deemed to have fully released and discharged the USAA Entities and all of the USAA Entities' (a) past, present, and future parents, subsidiaries, divisions, and affiliates, and (b) past, present, and future officers, directors, members, agents, employees, servants, stockholders, insurers, attorneys, representatives, successors, assigns, and independent contractors of the entities in part (a) above

(the "Released Persons"), of and from all Released Claims, and agree that they shall not now or hereafter initiate, maintain, or assert any Released Claims against the Released Persons in any other court action or before any administrative body (including any state department of insurance or other regulatory entity or organization), tribunal, arbitration panel, or other adjudicating body.  Without in any way limiting the scope of the Release described in Paragraphs 43-47, this Release covers, without limitation, any and all claims for attorneys' fees, costs, or disbursements incurred by Class Counsel or any other counsel representing Plaintiff or Settlement Class Members, or by the Plaintiff or Settlement Class Members, or any of them, in connection with or related in any manner to the Action, the settlement of the Action, the administration of such Settlement, and/or the Released Claims except to the extent otherwise specified in the Agreement.

45.    "Released Claims" means and includes any and all known and unknown claims, rights, actions, suits or causes of action of whatever kind or nature, whether *ex contractu* or *ex delicto*, statutory, common law or equitable, including but not limited to breach of contract, bad faith, extracontractual claims or claims for statutory violations, and claims for punitive or exemplary damages, or prejudgment or postjudgment interest, arising from or relating in any way to the USAA Entities' alleged failure to pay sufficient Sales Tax and/or Vehicle Regulatory Fees to Plaintiff and the Settlement Class Members. Released Claims do not include any claim for enforcement of this Agreement and/or the Final Order and Judgment. Released Claims do not include any claims, actions, or causes of action alleging that the USAA Entities failed to properly calculate the base or adjusted value of total loss vehicles except to the extent that such claims, actions, or causes of action relate to failure to pay sufficient Sales Tax and/or Vehicle Regulatory Fees.

46.    Without in any way limiting the scope of the Release described in Paragraphs 43-47, Plaintiff, and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Court-Approved Opt-Out List, also acknowledge that they are familiar with the principles of law such as Section 1542 of the Civil Code of the State of California and laws of other states, which provide:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS [OR HER] FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM [OR HER] MUST HAVE MATERIALLY AFFECTED HIS [OR HER] SETTLEMENT WITH THE DEBTOR.

To the extent that, notwithstanding the choice of law provisions in the Agreement, another state's law may be applicable, Plaintiff, and the Settlement Class Members who have not been excluded from the Settlement Class as provided in the Court-Approved Opt-Out List, hereby expressly agree that the provisions, rights, and benefits of Section 1542 of the Civil Code of the State of California and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction which may be applicable herein are hereby knowingly and voluntarily waived and relinquished by Plaintiff and the Settlement Class Members to the fullest extent permitted by law solely in connection with Unknown Claims constituting Released Claims, and Plaintiff and the Settlement Class Members hereby agree and acknowledge that this is an essential term of

13

47.     The Court declares the Settlement Agreement and this Final Order and Judgment to be binding on, and have res judicata and preclusive effect in, all pending and future lawsuits or other proceedings encompassed by the Released Claims maintained by or on behalf of Plaintiff and all other Settlement Class Members who have not been excluded from the Settlement Class as provided in the Court-Approved Opt-Out List, their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, assignees, assignors, successors, employees, employers, companies, partnerships, corporations, professional services corporations, limited liability companies, members, owners, officers, directors, partners, joint venturers, managing agents, affiliates, subsidiaries, predecessors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether they have received actual notice of the proposed Settlement and regardless of whether they previously initiated or subsequently initiate individual litigation or other proceedings encompassed by the Released Claims, as set forth in Paragraphs 36 and 43-47 of the Settlement Agreement.

48.     Accordingly, upon the Effective Date, the Named Plaintiff, and all Settlement Class Members who have not been excluded from the Settlement Class as

this Release.  In connection with this Release, Plaintiff and the Settlement Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the matters released herein.   Nevertheless, Plaintiff and the Settlement Class Members acknowledge that a portion of the consideration received herein is for a Release with respect to future damages and complaints, whether resulting from known injuries and consequences or from unknown injuries or unknown consequences of known or unknown injuries, and state that it is the intention of Plaintiff and the Settlement Class Members in executing this Release fully, finally, and forever to settle and release all matters, known or otherwise, and all claims relating thereto, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action) relating in any respect, without limitation, to the Released Claims.

47.     Upon entry of the Final Order and Judgment, the Action will be dismissed with prejudice as to the USAA Entities, Plaintiff, and all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Court-Approved Opt-Out List, and will release all Released Persons from Released Claims.

provided in the Court-Approved Opt-Out List, and all Persons claiming through them or acting or purporting to act for them or on their behalf, shall be barred from asserting any Released Claims against the USAA Entities and the other Released Persons, and such Settlement Class Members shall have released any and all Released Claims as against the USAA Entities and the other Released Persons, as provided in the Settlement Agreement.

49.    The Court hereby awards the following for the Attorneys' Fees and Expenses Award, to be paid from the Settlement Fund:  $783,947.20.

50.    The Court hereby awards the following for the Service Award, to be paid from the Settlement Fund:  $5,000.00.

51.    The Court approves the *cy pres* provisions in the Settlement Agreement. Accordingly, if there are checks for Settlement Claim Payments that are uncashed after the 180-day Stale Date, the uncashed amounts shall become part of the *cy pres* awarded to the Tragedy Assistance Program for Survivors, an organization that provides services and compassionate care to those grieving the death of a military loved one; provided, however, that exceptions may be made for checks that are not cashed by the time of the Stale Date for service members who are then deployed.

52.    The Settlement Agreement and the Settlement provided for therein, and any proceedings taken pursuant thereto, are not, and should not in any event be offered, received, or construed as evidence of, a presumption, concession, or an admission by any Party of liability or non-liability or of the certifiability or non-certifiability of the Litigation Class, or any litigation class, or of any misrepresentation or omission in any statement or written document approved or made by any Party; provided, however, that reference may be made to the Settlement Agreement and the Settlement provided for therein in such proceedings as may be necessary to effectuate the provisions of the Settlement Agreement, as further set forth in that Agreement.

53.    The Court permanently enjoins the Named Plaintiff, and all other Settlement Class Members who have not been excluded from the Settlement Class as

provided in the Court-Approved Opt-Out List, from (i) filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on the Released Claims and (ii) organizing Settlement Class Members into a separate group, class, or subclass for purposes of pursuing as a purported class action any lawsuit or administrative, regulatory, arbitration, or other proceeding (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on the Released Claims.

54.     The Court orders that certification of the Settlement Class and final approval of the Settlement, and all actions associated with them, are undertaken on the condition that they shall be vacated if the Settlement Agreement is terminated or disapproved in whole or in part by the Court, or any appellate court and/or other court of review, or if any of the Parties invokes the right to withdraw from the Settlement as provided in Paragraphs 49-51 of the Settlement Agreement, in which event the Agreement and the fact that it was entered into shall not be offered, received, or construed as an admission or as evidence for any purpose, including but not limited to an admission by any Party of liability or non-liability or of any misrepresentation or omission in any statement or written document approved or made by any Party, or of the certifiability of the Litigation Class, or any litigation class, as further provided in Paragraph 51 of the Settlement Agreement.

55.     The Court approves the termination and withdrawal procedures in Paragraphs 49-51 of the Settlement Agreement.  If the Settlement does not become Final for any reason (whether due to a termination of the Settlement Agreement in accordance with its terms, a failure or refusal of the Court to approve the proposed Settlement, or a reversal or modification of the Court's approval of the proposed Settlement on appeal, or for any other reason), the Parties shall be returned to the status *quo ante* as of May 17, 2022, as further provided in Paragraph 8 of the Settlement

Agreement.  In that event, (a) the Settlement Class shall be vacated and the Litigation Class vacated as part of this Settlement shall automatically be re-certified without prejudice to any Party's position on the issue of class certification, the merits of any claims or defenses, or any other issue, in this Action or any other action; (b) the Second Amended Complaint shall be vacated and the First Amended Complaint shall become the operative pleading (except that CIC shall remain dismissed from the Action); (c) all orders entered regarding the Settlement shall be vacated; (d) the Parties and their attorneys shall proceed as though the Settlement Agreement had never been entered, and the Parties and their Counsel shall not cite nor reference that Agreement except as necessary to inform the Court, and nothing in the Agreement and/or the fact that it was entered into shall be offered, received, or construed as an admission or as evidence for any purpose in any proceeding, as further provided in Paragraphs 48-51 of the Settlement Agreement; (e) all of the Parties' obligations under the Settlement shall cease to be of any force and effect; provided, however, that the USAA Entities shall remain liable for all reasonable notice and settlement administration costs incurred before the withdrawal or termination; but further provided that the Settlement Administrator shall promptly reimburse the USAA Entities for any amounts not used for reasonable notice and settlement administration costs from the initial $50,000 payment made by the USAA Entities pursuant to Paragraph 24(a) of the Settlement Agreement); (f) the Named Plaintiff and Class Counsel shall not argue that the USAA Entities are barred from asserting defenses on the merits and as to class certification as a result of the proposed Settlement; and (g) nothing in the Settlement may be used as an admission or offered into evidence in any proceeding involving the USAA Entities whatsoever, as further  provided in the Settlement Agreement. Furthermore, in the event of a withdrawal pursuant to Paragraphs 49-51, the fact of this Agreement or settlement having been made shall not be admissible or entered into evidence for any purpose; this Agreement and all documents, orders, and other evidence relating to the Agreement and settlement shall not be offered, received, or construed as evidence of a

17

1  presumption, concession, or an admission by any Party of liability or non-liability, of
2  the certifiability or non-certifiability of the Litigation Class, or any litigation class, or
3  of any misrepresentation or omission in any statement or written document approved
4  or made by any Party.  Furthermore, in the event of a withdrawal by the USAA Entities,
5  the Named Plaintiff and Class Counsel agree that the USAA Entities shall retain the
6  right to assert any and all defenses and claims in the Action (including all defenses and
7  appellate rights to certification of a litigation class) and that the Named Plaintiff shall
8  not argue that the USAA Entities are barred from asserting those defenses or claims
9  due to waiver, estoppel, or similar arguments.

10  56.  The Court approves the confidentiality provisions in Paragraphs 52-56 of
11  the Settlement Agreement and orders the Parties to proceed in accordance with those
12  provisions regarding the Confidential Information.

13  57.  The Court authorizes the Parties, without further approval from the Court,
14  to agree to and adopt such amendments, modifications, and expansions of the
15  Settlement Agreement and all Exhibits thereto as (i) shall be consistent in all material
16  respects with the Final Order and Judgment and (ii) do not limit the rights of Settlement
17  Class Members.

18  Dated: APRIL 17, 2023

19  Terry J. Hatter, Jr.
20  Senior United States District Judge

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### EXHIBIT 1:  COURT-APPROVED OPT-OUT LIST

1.      Alexander Frankian              Los Angeles, CA

/ / /